Dorothy THOMPSON, Appellant,

v.

TRINITY UNIVERSAL INSURANCE COMPANY, et al, Appellees.

No. 12–85–0023–CV.

Court of Appeals of Texas, Tyler.

April 17, 1986.

Rehearing Denied May 15, 1986.

John R. Brumbelow, Tyler, for appellant.

Larry L. Gollaher, Gollaher & Hart, Dallas, Michael G. Carroll, Potter, Guinn, Minton, Roberts & Davis, Tyler, for appellees.

## PER CURIAM.

This is an action brought to recover proceeds alleged due under a builder's risk policy of insurance.

Appellant Thompson was the sole owner of Thom-Heck, Inc., a corporation established by her late husband. In October of 1979, Thom-Heck, Inc., purchased approximately 197 acres on Lake Palestine. A "make-believe western city," Frontier City, was located on that property. Frontier City had been used as a resort in previous years, but at the time the land was purchased, many of the buildings had collapsed or fallen into a hopeless state of disrepair. Still standing was a building which had been used as a hotel ("hotel" or "building"), which Thompson testified was "structurally sound," but in need of "cosmetic" repair. The two-story hotel contained a commercial kitchen, dining room, bar, and ten bedrooms with baths.

Thompson approached Milton Evans, an insurance agent representing appellee Trinity Universal Insurance Company ("Trinity"), about insuring the hotel. Evans told her that he would not insure the building until remodeling was started. Once renovations began, a builder's risk policy in the amount of $100,000.00 ("policy") was issued by Trinity for the period from December 24, 1980, to December 24, 1981. Security National Insurance Company ("Security"), co-defendant at trial, insured the contents.

A fire occurred on January 20, 1981, completely destroying the building and contents. Thompson testified that the work being done at the time of the fire included realigning the building, repairing the roof, renovating the air conditioner, concreting the front boardwalk, varnishing the paneling and painting the bedrooms. Thompson notified the insurance agent of the fire and was told that the builder's risk policy covered materials and labor used in renovating the building, but not the building itself. Appellant filed suit to recover under the policy.

Trial was before a jury, who found the actual cash value of the property destroyed by fire to be:

1. Building—$35,000.00.
2. Improvements to building—$10,899.17.
3. Household goods stored—$650.00.
4. Materials in building for making alterations, extensions and repairs—$440.00.

On the basis of the jury's findings, the trial court entered judgment in favor of Thompson against Security for $650.00 (household goods) and against Trinity for $11,339.17 (improvements and materials). The trial court did not award Thompson recovery for loss of the building.

Thompson asserts in her first point of error that the trial court erred in refusing to award recovery for the $35,000.00 loss of the building. Trinity responds by arguing that the policy covered materials and labor that went into renovating the building, but not the building itself. Trinity argues that the policy is ambiguous and the circumstances surrounding its execution showed that the parties understood

that the existing hotel building was not insured.

We find no ambiguity in the wording of the policy. Standard Texas Form 21 was attached to the policy and incorporated as a description of the property to be insured. Paragraph 1 of that attachment states:

This policy being for an amount not to exceed One hundred per cent (100%), hereinafter referred to as 'this Company's percentage of liability,' of the *actual values existing in any building or structures described below*, from time to time as values are added, and not to exceed in any event 'this Company's percentage of liability' of the 'Estimated Completed Cost ...'

(Emphasis added.) The estimated completed cost of the building, described as a frame construction with intended occupancy as "Frontier City Old West Building," is listed as $100,000.00.

Paragraph 2 states in pertinent part: This policy as to each or any building or structure above described shall be and constitute insurance on each or any of the said building or structures while in course of construction in an amount not to exceed 'this Company's percentage of liability' of the actual values which may have been placed into or made a part of each or any of such buildings or structures.

(Emphasis added.)

■ Obviously, the contemplated structure when completed would be composed not only of new materials, but of the existing building itself. Through renovation, the existing building was to be "made a part of" the final structure. While Trinity's agent may have refused to insure the original building for its intended use prior to renovation, that refusal is not tantamount to saying it had no value. In fact, the jury found the actual loss suffered as a result of the destruction of the hotel, exclusive of improvements, to be $35,000.00.

The plain meaning of the provision cited is that the existing structure is covered by the policy. We see no other provisions within the policy which are inconsistent

with our interpretation. Where the language of an insurance contract is plain, it must be enforced as made. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984); *Vanguard Ins. Co. v. Stewart*, 593 S.W.2d 736, 739 (Tex.Civ.App.—Houston [1st Dist.] 1979), *aff'd*, 603 S.W.2d 761 (Tex.1980).

In addition to claiming the policy did not cover loss of the building, Trinity suggests that coverage should have been denied because Thompson did not have an insurable interest in the building. Trinity points to the fact that title to the 197 acres and improvements was in Thom-Heck, Inc., not Thompson personally. While Trinity's contention would more properly have been raised by cross-point, we will consider it.

■ It is not always necessary to prove title to show an insurable interest in property; the generally accepted rule was set out in *Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex.1963):

"[A]n insurable interest exists when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction ..."

*See also St. Paul Fire & Marine Ins. Co. v. Daughtry*, 699 S.W.2d 321 (Tex.App.—San Antonio 1985, writ Ref. N.R.E.) The claimant has the burden of proving an insurable interest. *See Monarch Fire Ins. Co. v. Redmon*, 109 S.W.2d 177, 178 (Tex. Civ.App.—Dallas 1937, no writ hist.).

Thompson testified that Thom-Heck, Inc. was created by her late husband to act as a "holding company" for his various business interests. When he died, he left the corporation to appellant. She testified that she was involved in the management of the corporation.

■ "Frontier City" was bought as an investment. Thompson hoped to restore the property to the resort-type area it had been in the past, using the hotel for overnight accommodations, to "hopefully bring in tired businessmen from Dallas and Hous-

ton for hunting and fishing, and cook-outs and things of that sort." As sole owner of the corporation, obviously Thompson suffered a pecuniary loss from the destruction of the building and had an insurable interest in it.

■ Trinity emphasizes Thompson's failure to designate points of error when requesting a partial statement of facts as required by Tex.R.Civ.P. 377(d). If the request does not include the points to be relied upon and only a partial statement of facts is submitted, it must be presumed on appeal that the evidence omitted supports the verdict and the judgment of the trial court. *DeLeon v. Dr. Pepper Bottling Co.*, 694 S.W.2d 381, 382 (Tex.App.—Corpus Christi 1985, writ Ref. N.R.E.).

■ Trinity contends that this presumption supports the trial court's judgment, which could be predicated on Thompson's failure to prove an insurable interest in the building. Under this theory, the evidence omitted from the record would be presumed to negate the existence of Thompson's insurable interest. However, to say that the trial court premised its decision on a failure to prove insurable interest in the building would be inconsistent with the trial court's award for materials and labor already incorporated into that building at the time of loss. We believe the judgment implicitly assumes that Thompson had an insurable interest in the building, and therefore, the excluded testimony would not be presumed to prove otherwise.

Having found the building to be covered by the insurance policy, we hold that the trial court should have allowed Thompson to recover the actual cash value of the building as found by the jury, in addition to the amount awarded by the judgment.

■ Thompson next complains that the trial court erred in refusing to allow her recovery against Trinity and Security for pre-judgment interest of six per cent (6%). Thompson's petition contained only a general prayer for relief, making no specific request for interest. A general prayer for relief would not be sufficient to support an award of pre-judgment interest if sought at common law as an element of damages. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109, 117 (Tex. 1978); *Miles v. Royal Indemnity*, 589 S.W.2d 725, 735 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). However, Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp.1986) allows pre-judgment interest at the rate of six percent (6%) if a claimant pleads and proves a written contract ascertaining a sum payable on a date certain. *Republic National Bank*, 578 S.W.2d at 116–117. A detailed discussion of whether pre-judgment interest would be allowed under a general prayer for relief on a claim against an insurer appears in *Miles*, 589 S.W.2d at 735–737; pre-judgment interest was allowed in that case under a general prayer for relief.

■ Obviously, a question of fact existed as to the amount of loss suffered by Thompson; however, we do not think the fact that the amount of proceeds payable under the policy was not immediately ascertainable at the time of loss would preclude the operation of art. 5069–1.03. As quoted by the court in *Miles*, 589 S.W.2d at 736, " '[i]t is not necessary ... that the contract shall itself establish a fixed liability in a definite amount as of a date certain. It is sufficient ... if the contract provides the conditions upon which liability depends and fixes a measure by which the sum payable can be ascertained with reasonable certainty*, in the light of the attending circumstances.' " The policy in question did provide conditions upon which liability would depend. The policy provided for payment of an amount not to exceed "this Company's percentage of liability" of "the actual values which have been placed into or made a part of each or any of such building or structures." The actual value of the property lost was ascertainable with reasonable certainty. Therefore, we hold that appellant is entitled to collect pre-judgment interest of six per cent (6%) on the amounts awarded by the court. Where the insurer denies liability and the insured establishes liability, interest runs from the

date of the denial of the claim. *United States Fire Ins. Co. v. Skatell,* 596 S.W.2d 166, 171 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.). Although there was no evidence at trial as to when the claim was denied, a general denial was filed by Trinity and Security on August 21, 1981. Prejudgment interest would run from that date until the date of judgment. *See Miles,* 589 S.W.2d at 737.

The judgment of the trial court denying recovery from Trinity of $35,000.00 for loss of the building is reversed and rendered. The judgment of the trial court denying recovery of prejudgment interest against Trinity and Security is reversed and rendered. In all other respects, the judgment of the trial court is affirmed.