GREAT AMERICAN INSURANCE
COMPANY, Appellant

v.

NORTH AUSTIN MUNICIPAL UTILITY
DISTRICT NO. 1, Appellee.

No. 03–96–00294–CV.

Court of Appeals of Texas,
Austin.

Oct. 23, 1996.

Rehearing Overruled Dec. 12, 1996.

Arthur F. Selander, Quilling, Selander, Cummiskey, Clutts & Lownds, P.C., Dallas, for Appellant.

Scott R. Kidd, Brown McCarroll & Oaks Hartline, Austin, for Appellee.

Before POWERS, ABOUSSIE and JONES, JJ.

JONES, Justice.

Appellant Great American Insurance Company ("Great American") appeals a judgment in favor of North Austin Municipal Utility District No. 1 ("MUD"), appellee, awarding MUD equitable prejudgment interest at the rate of ten percent per annum. Great American contends in its first four points of error that the rate of prejudgment interest should have been six percent rather than ten percent. Points of error five, six, and seven assert error with respect to the award, calculation, and method of compounding of equitable prejudgment interest. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This was originally a suit in which MUD sued Great American for violations of the DTPA and Insurance Code and for breach of contract. The dispute grew out of construction work done by others on the Rattan Creek Lift Station, which was owned by MUD. Great American provided the performance bond on the construction contract between MUD and the general contractor. The case was tried to a jury, which found against Great American. The trial court rendered judgment in favor of MUD in the amount of $2,338,207.20, including attorney's fees and prejudgment interest. Great American appealed to this Court, which affirmed the trial court's decision. *Great Am. Ins. Co.*

*v. North Austin Mun. Util. Dist. No. 1,* 902 S.W.2d 488 (Tex.App.-Austin 1993), *aff'd in part & rev'd in part,* 908 S.W.2d 415 (Tex. 1995). The Texas Supreme Court, affirming in part and reversing in part, ruled that Great American was liable to MUD only for breach of contract in the amount of $397,503.20, plus attorney's fees and prejudgment interest. The court remanded the cause to the trial court for a determination of the precise amount of prejudgment interest to which MUD was entitled. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415 (Tex.1995).

On remand, Great American asserted the applicability of article 5069–1.03 of the Revised Civil Statutes, which mandates a six percent rate in certain circumstances. *See* Tex.Rev.Civ. Stat. Ann. art. 5069–1.03 (West 1987). Concluding that Great American's performance bond did not state the conditions on which liability depended and the measure of damages from which the sum payable could be ascertained, the trial court determined that the contract did not satisfy the prerequisites for applying article 5069–1.03. The court ruled, therefore, that no statute expressly authorized prejudgment interest. Accordingly, the court awarded MUD *equitable* prejudgment interest at the rate of ten percent pursuant to article 5069–1.05 of the Revised Civil Statutes. *See* Tex. Rev.Civ. Stat. Ann. art. 5069–1.05 (West Supp.1996) (setting interest rate to be calculated within a range of ten and twenty percent). On appeal, Great American contends that (1) article 5069–1.03 applies, so the rate should have been six percent, and (2) the trial court erred in its calculation of equitable prejudgment interest.

## DISCUSSION

■ Great American first contends that the performance bond and construction contract in question, considered together, meet the requirements for article 5069–1.03 to govern the rate of prejudgment interest in this case. Article 5069–1.03 states:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts *ascertaining the sum payable,* commencing

on the thirtieth (30th) day from and after the time when the sum is due and payable. Tex.Rev.Civ. Stat. Ann. art. 5069–1.03 (West 1987) (emphasis added). Article 5069–1.03 has been construed to require a six percent per annum rate if the parties' contract (1) provides the conditions upon which liability depends, and (2) fixes a measure by which the sum payable can be ascertained with reasonable certainty. *See Federal Life Ins. Co. v. Kriton,* 112 Tex. 532, 249 S.W. 193, 195 (1923).

In point of error one, Great American argues that the trial court erred in concluding that Great American's contract does not sufficiently state the conditions upon which its liability to MUD depends. In point of error two, Great American argues that the court erred in concluding that the contract does not sufficiently state the measure by which the sum payable to MUD can be ascertained with reasonable certainty. Points of error three and four complain in general terms of the trial court's conclusion that article 5069–1.03 does not apply.

Three relatively recent cases decided by the Texas Supreme Court have significantly narrowed the category of cases to which article 5069–1.03 applies and have approved awards of equitable prejudgment interest in a variety of circumstances. In *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), the court allowed an award of equitable prejudgment interest in a tort case, to which article 5069–1.03 clearly did not apply. *Id.* at 554. In a subsequent case, *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929 (Tex.1988), the supreme court affirmed an award of equitable prejudgment interest in a contract case, holding that article 5069–1.03 did not apply where the contract contained "no measure by which the sum payable could be ascertained" for a breach of contract. *Id.* at 930. Three justices dissented, arguing that article 5069–1.03 "applies to *all* contract cases in which the contract is silent on prejudgment interest." *Id.* at 931 (Wallace, J., dissenting). Finally, only a few months after *Perry Roofing,* the court in *Rio Grande Land & Cattle Co. v. Light,* 758 S.W.2d 747 (Tex.1988), viewed the statute even more narrowly and determined that, in light of *Cavnar* and *Perry Roofing,* article 5069–1.03

did not govern prejudgment interest in a breach-of-contract case where the amount of damages "could not be ascertained by reference to the face of the contract." *Light*, 758 S.W.2d at 748. *Light* was a unanimous per curiam opinion.

Most appellate courts have construed these three cases, culminating in *Light*, to mean that if any extrinsic evidence is needed to determine the amount of contract damages, article 5069–1.03 does not apply. *See Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 646 (Tex.App.-Texarkana 1995, no writ); *Houston Cable TV v. Inwood W. Civic Ass'n*, 839 S.W.2d 497, 504–05 (Tex.App.-Houston [14th Dist.] 1992), *writ granted w.r.m.*, 860 S.W.2d 72 (Tex.1993); *International Piping Sys., Ltd. v. M.M. White & Assocs., Inc.*, 831 S.W.2d 444, 453 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Sage Street Assocs. v. Northdale Constr. Co.*, 809 S.W.2d 775, 778 (Tex.App.-Houston [14th Dist.] 1991), *aff'd in part & rev'd in part*, 863 S.W.2d 438 (Tex. 1993) (award of prejudgment interest at rate of ten percent per annum affirmed); *Phillips v. Phillips*, 792 S.W.2d 269, 272–73 (Tex. App.-Tyler 1990), *aff'd*, 820 S.W.2d 785 (Tex. 1991); *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.-Houston [14th Dist.] 1990, writ denied); *General Life and Acc. Ins. Co. v. Handy*, 766 S.W.2d 370, 374 (Tex.App.-El Paso 1989, no writ); *cf. Atchison, Topeka & Santa Fe R.R. v. Sherwin–Williams Co.*, 963 F.2d 746, 751–52 (5th Cir.1992). As one court recently commented, "since the *Cavnar* decision, courts appear to be leaning away from the liberal test, toward a more restrictive test requiring the exact 'amount of damages to be ascertainable from the face of the contract' before an award of prejudgment

interest under the statute would be proper." *Allied Chemical Co. v. DeHaven*, 824 S.W.2d 257, 266–67 (Tex.App.-Houston [14th Dist.] 1992, no writ).

Great American relies on *Thompson v. Trinity Universal Insurance Co.*, 708 S.W.2d 45 (Tex. App–Tyler 1986, writ ref'd n.r.e.), and *Dolenz v. American General Fire & Casualty Co.*, 798 S.W.2d 862 (Tex.App.-Dallas 1990, writ denied), in which article 5069–1.03 was held to apply because a *measure* of damages (*i.e.*, a method or way of determining damages) could be gleaned from the contract, even though extrinsic evidence was needed to calculate the precise amount. We decline to follow the holdings of these two cases, for the following reasons. First, *Thompson* was decided before the supreme court's decisions in *Perry Roofing* and *Light*. Second, *Dolenz* did not cite *Light*, even though it had been issued two years earlier. Finally and most straightforwardly, we think the holdings of those cases are inconsistent with *Perry Roofing* and *Light*.

In the present case, the contract between the parties is the performance bond, which expressly incorporates the underlying construction contract between MUD and the contractor. Under the terms of those documents, extrinsic evidence was needed to ascertain the actual amount of damages.[1] Accordingly, we conclude that the damages were not ascertainable from the face of the contract, and article 5069–1.03 does not apply. We overrule points of error two through four. In light of this holding, we need not address point of error one.

■ In points of error five, six, and seven, Great American asserts that the trial court erred in (1) awarding equitable prejudgment

---

1. The relevant portions of the construction contract provided as follows:

13.12.... If Contractor does not promptly comply with the terms of such instructions [to correct defective work], ... Owner may have the defective work corrected or the rejected work removed and replaced, and all direct, indirect and consequential costs of such removal and replacement (including but not limited to fees and charges of engineers, architects, attorneys and other professionals) will be paid by contractor....

13.14.... All direct, indirect and consequential costs of OWNER in exercising such rights and remedies will be charged against CONTRAC-

TOR in an amount approved as to reasonableness by ENGINEER, and a Change Order will be issued incorporating the necessary revisions in the Contract Documents with respect to the Work; and OWNER shall be entitled to an appropriate decrease in the Contract Price, and, if the parties are unable to agree as to the amount thereof, OWNER may make a claim therefor as provided in Article 11. Such direct, indirect and consequential costs will include but not be limited to fees and charges of engineers, architects, attorneys and other professionals, all court and arbitration costs and all costs of repair and replacement of work of others destroyed or damaged by correction, removal or replacement of CONTRACTOR'S defective work.

interest at all under these circumstances; (2) calculating equitable prejudgment interest pursuant to article 5069–1.05; and (3) concluding that the equitable prejudgment interest awarded to MUD should be compounded daily. However, Great American's brief fails to provide supporting authority or discussion for any of those points of error. Accordingly, they are waived and we need not address them. *See Rayburn v. Giles,* 182 S.W.2d 9, 13–14 (Tex.Civ.App.-San Antonio 1944, writ ref'd) (appellant's points of error waived because they were not argued); *Dear v. City of Irving,* 902 S.W.2d 731, 735 n. 3 (Tex.App.-Austin 1995, writ denied) (court overruled appellant's points of error because they had no supporting authority). We overrule points of error five, six, and seven.

## CONCLUSION

Because Great American's contract (the performance bond and relevant construction contract) does not satisfy the prerequisites for application of article 5069–1.03, we conclude that the trial court did not err in awarding equitable prejudgment interest at the rate of ten percent per annum pursuant to article 5069–1.05. We affirm the judgment of the trial court.