**GREAT AMERICAN INSURANCE COMPANY, Petitioner,**

v.

**NORTH AUSTIN MUNICIPAL UTILITY DISTRICT NO. 1, Respondent.**

No. 97–0081.

Supreme Court of Texas.

July 31, 1997.

Arthur F. Selander, Dallas, for Petitioner.

Scott R. Kidd, Austin, for Respondent.

## OPINION

PER CURIAM.

This suit arises out of a construction project for a municipal wastewater lift station in which Great American Insurance Company ("Great American") issued payment, performance, and maintenance bonds in favor of the North Austin Municipal Utility District No. 1 ("MUD"). MUD contracted with Underground Utilities Company ("Underground") to refurbish and relocate an existing dry well. When Underground refused to correct allegedly defective work performed on the well, MUD sued Underground, Great American, an engineering firm, and a subcontractor.

MUD alleged violations of the Deceptive Trade Practices Act, Insurance Code, and breach of contract against Great American, as the surety on the performance bond. Following a jury trial, the trial court rendered judgment for MUD based on liability findings against all the defendants. Regarding Great American, the jury found that it had knowingly committed deceptive acts in violation of article 21.21 of the Insurance Code and had breached a common law duty of good faith and fair dealing. The trial court rendered judgment against Great American for $2,338,207.20, including attorney's fees and prejudgment interest. Great American alone appealed the trial court's judgment, and the court of appeals affirmed. 850 S.W.2d 285, 902 S.W.2d 488. On the first appeal to this Court, we affirmed the court of appeals judgment in part and reversed in part, holding that Great American was liable to MUD only for breach of contract in the amount of $397,503.20, plus attorney's fees and prejudgment interest. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415 (Tex.1995). We then remanded the case to the trial court for a calculation of prejudgment interest due to MUD. *Id.* at 428–29.

On remand, Great American asserted that MUD was entitled to only six percent per annum prejudgment interest, pursuant to Texas Revised Civil Statutes article 5069—1.03. The trial court, instead, awarded equitable prejudgment interest of ten percent per annum, the rate provided in article 5069—1.05. The court of appeals affirmed. 933 S.W.2d 737.

In this appeal, Great American contends that the court of appeals erred in holding that article 5069—1.03 does not apply when extrinsic evidence is needed to ascertain the damages arising out of the contract. More specifically, Great American claims that the performance bond and the construction contract between MUD and Underground, read together, meet the requirements of article 5069—1.03, which mandates prejudgment interest at six percent per annum.

Article 5069—1.03 provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts *ascertaining the sum payable,* commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

TEX.REV.CIV. STAT. ANN. art. 5069—1.03 (Vernon 1987) (emphasis added). A contract is one "ascertaining the sum payable" when it

(1) "provides the conditions upon which liability depends," and (2) "fixes a measure by which the sum payable can be ascertained with reasonable certainty, in the light of the attending circumstances." *Federal Life Ins. Co. v. Kriton*, 112 Tex. 532, 249 S.W. 193, 195 (1923); *see also Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex.1988); *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 567 (Tex.1984). The statute is to be given a liberal interpretation. *See Kriton*, 249 S.W. at 195; *La Sara Grain*, 673 S.W.2d at 567.

Relying on three recent decisions from this Court, the court of appeals opined that we have "significantly narrowed" those instances in which article 5069—1.03 applies. 933 S.W.2d at 738 (citing *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985); *Perry Roofing*, 744 S.W.2d 929; *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747 (Tex.1988) (per curiam)). For example, the court of appeals cited *Light* for the rule that when the amount of damages for breach of the contract at issue "could not be ascertained by reference to the face of the contract," article 5069—1.03 did not govern prejudgment interest. *See Light*, 758 S.W.2d at 748. Concluding that the damages for breach in this case "were not ascertainable from the face of the contract" because the parties had to resort to extrinsic evidence to determine the actual amount of damages, the court held that article 5069—1.03 does not apply. 933 S.W.2d 737, 739.

Other courts of appeals have also interpreted *Light* similarly. In concluding that article 5069—1.03 was inapplicable, these decisions relied on the fact that the damages in each case could only be determined by resorting to extrinsic evidence. *See, e.g., Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 646 (Tex.App.—Texarkana 1995, no writ); *International Piping Sys., Ltd. v. M.M. White & Assocs., Inc.*, 831 S.W.2d 444, 453 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Sage Street Assocs. v. Northdale Constr. Co.*, 809 S.W.2d 775, 778 (Tex. App.—Houston [14th Dist.] 1991), *aff'd in part & rev'd in part*, 863 S.W.2d 438 (Tex. 1993); *Phillips v. Phillips*, 792 S.W.2d 269, 272–73 (Tex.App.—Tyler 1990), *aff'd*, 820 S.W.2d 785 (Tex.1991); *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *General Life & Acc. Ins. Co. v. Handy*, 766 S.W.2d 370, 374 (Tex.App.—El Paso 1989, no writ).

We are not persuaded. Neither *Perry Roofing* nor *Light* actually hold that article 5069—1.03 is inapplicable when extrinsic evidence is required to calculate damages under the contract. The contract in *Perry Roofing* did not prescribe *any* method or means for calculating damages in the event of breach. *See Perry Roofing*, 744 S.W.2d at 930 ("The contract . . . contains no measure by which a sum payable could be ascertained for damages resulting from Perry Roofing's failure to properly install the roof."). And we noted in *Light* that "[w]hile the relationship between Light and Rio Grande arose under a contract, the damages suffered by Light could not be ascertained by reference to that contract. . . . The contract did not contain provisions to determine damages from overcharging for costs expended" for the services Rio Grande performed. *Light*, 758 S.W.2d at 748. Thus, the reason that article 5069—1.03 did not apply in either case was not because extrinsic evidence was needed to quantify damages, but because there was no measure in either contract by which damages could be determined.

■ We accordingly hold that article 5069—1.03 applies when calculating prejudgment interest even if extrinsic evidence is needed to quantify contract damages so long as the contract *fixes a measure* by which the sum payable can be ascertained with reasonable certainty in light of the attending circumstances. We disapprove of those court of appeals opinions holding that 5069—1.03 cannot be applied when resort to extrinsic evidence to determine damages is necessary. For additional reasons discussed below, we also hold that article 5069—1.03 applies to this case.

To determine whether article 5069—1.03 applies, we consider the language of two contracts. The first contract is the performance bond on which Great American is liable. The second is the construction contract between MUD and the general contractor, Underground. The performance bond

provides that whenever Underground defaults under the construction contract, Great American may either remedy the default or shall "make available ... sufficient funds to pay the cost of completion less the balance of the contract price," but not exceeding the amount of the bond.

The construction contract also provides a measure for the funds that would be necessary to remedy any default by Underground. The relevant language provides:

> 13.12.... If Contractor does not promptly comply with the terms of [MUD's] instructions [to correct defective work], ... [MUD] may have the defective work corrected or the rejected work removed and replaced, and *all direct, indirect and consequential costs of such removal and replacement (including but not limited to fees and charges of engineers, architects, attorneys and other professions) will be paid by [Underground]* ....

> .   .   .   .   .

> 13.14.... All direct, indirect and consequential costs of [MUD] in exercising [its right to correct defective work] will be charged against [Underground] in an amount approved as to reasonableness by ENGINEER, and a Change Order will be issued incorporating the necessary revisions in the Contract Documents with respect to the Work; and [MUD] shall be entitled to an appropriate decrease in the Contract Price, and, if the parties are unable to agree as to the amount thereof, [MUD] may make a claim therefor as provided in Article 11. *Such direct, indirect and consequential costs will include but not be limited to fees and charges of engineers, architects, attorneys and other professions, all court and arbitration costs and all costs of repair and replacement of work of others destroyed or damaged by correction, removal or replacement of [Underground's] defective work.*

(emphasis added). The construction contract clearly provides a method for determining the extent of Underground's, and thus Great American's, liability in the event of Underground's default. Thus, it is a contract "ascertaining the sum payable," and article 5069—1.03 dictates the amount of prejudg-

ment interest owed by Great American. Therefore, it was error to award equitable prejudgment interest at ten percent per annum, the rate contained in article 5069—1.05.

Consequently, pursuant to Texas Rules of Appellate Procedure 170, without hearing oral argument, we grant Great American's application for writ of error and reverse the judgment of the court of appeals. We hereby render judgment that MUD receive prejudgment interest as provided by Texas Revised Civil Statutes article 5069—1.03, and remand this cause to the trial court for the computation of that amount and rendition of judgment consistent with this opinion.