TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00177-CV







State Farm Lloyds/Sheila Fitzgerald and Charles Lanham, Appellants



v.



Sheila Fitzgerald and Charles Lanham/State Farm Lloyds, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-10131, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING








 This suit arises out of an insurance claim appellees Sheila Fitzgerald and Charles
Lanham filed under their homeowner's policy with appellant State Farm Lloyds ("State Farm"). 
A jury found State Farm liable for breaching its insurance contract and violating provisions of the
Texas Insurance Code and the Deceptive Trade Practices--Consumer Protection Act (the "DTPA"). 
The trial court rendered judgment on the verdict and awarded appellees $178,284 in damages,
along with prejudgment interest and attorney's fees. State Farm appeals in seven points of error. 
Appellees cross-appeal in one point of error. We will affirm the trial court's judgment.


BACKGROUND


 Appellees carry a State Farm homeowner's insurance policy that insures losses up
to $137,500. Although the policy generally excludes damages caused by "inherent vice, wear and
tear or deterioration . . . or settling, cracking, bulging, shrinkage, or expansion of foundations,
walls, or floors," it specifically insures losses caused by accidental discharges of water from a
plumbing system. In the event of such losses, State Farm is responsible for paying the reasonable
cost of making the necessary repairs. Pursuant to the policy's additional living expenses ("ALE")
provision, State Farm must also cover the additional living expenses--including rent, utilities, and
moving expenses--that may be incurred should the policyholder's home be rendered uninhabitable.

 In October 1994, appellees discovered a plumbing leak in their home. The leak
caused extensive damage to the home's walls, hardwood floors, and foundation. Believing that
the damage was covered by their homeowner's policy, appellees filed a claim with State Farm. 
Within one week, State Farm sent an adjuster to the house to evaluate the claim. Initially, the
adjuster indicated that the damage was probably not covered by the policy. However, after
conducting several tests and inspections, State Farm ultimately concluded four months later in
February 1995 that the damages were in fact covered. State Farm agreed to pay for the necessary
repairs, which included leveling the home's foundation, rerouting the plumbing, and making
several cosmetic repairs.

 After learning that the property damage was insured, appellees contacted Lester
Germanio, a structural engineer, to draw up a plan of repair. At State Farm's request, appellees
also contacted two general contractors of their choice, Robert Coe Builders ("Coe") and Rayco
Enterprises ("Rayco"), and solicited bids from both. Coe bid $62,280 on the project. Rayco bid
$102,000. Appellees chose to go with the lower estimate submitted by Coe. However, State
Farm rejected Coe's bid, claiming that the estimate was too high. Coe agreed to meet with State
Farm's adjusters to attempt to settle on a mutually agreeable amount. Ultimately, these
negotiations were unsuccessful. At trial, Lanham testified that State Farm's adjuster was abrasive
and uncooperative. The adjuster disagreed with several items in Coe's bid, including the amounts
allocated for various repairs and the charges Coe included for overhead and profit as a general
contractor. In the end, Coe compromised and submitted two revised estimates, but State Farm
refused to accept either bid.

 In the meantime, appellees vacated their home in anticipation of the construction
repairs and rented a nearby house at State Farm's direction. State Farm agreed to pay for
appellees' rent, moving expenses, and only a portion of their utility costs in satisfaction of the
policy's ALE coverage. In September 1995, almost a year after appellees first filed their claim
and approximately seven months after State Farm agreed to pay the claim, appellees received a
check from State Farm for $51,888, an amount substantially less than Coe's final bid. Along with
the check, State Farm included its own itemized estimate of repairs. According to appellees, this
estimate failed to include many items in need of repair. Despite appellees' repeated requests,
State Farm refused to take these additional costs into account.

 Shortly thereafter, State Farm informed appellees that unless construction began
immediately, the ALE coverage would be terminated and appellees would have to move back into
the home, regardless of whether any repairs had been made. (1) Both Lanham and Fitzgerald
testified that because of the limited amount of time remaining before State Farm would cease
paying for their additional living expenses, they felt tremendous pressure to accept State Farm's
settlement and find a contractor who could begin work immediately. Fitzgerald searched the
yellow pages for any contractor willing to do the job. However, Fitzgerald testified that few
contractors would consider doing the work, given the amount of money State Farm had allocated
for the project. In the end, only two builders, Capital Construction ("Capital") and Rockwell
Builders ("Rockwell"), expressed any interest in doing the repairs. Because Capital was
uninsured and lacked any experience doing the type of work required, appellees ultimately were
forced to hire Rockwell.

 In January 1996, appellees took $28,000 of the funds State Farm had provided and
deposited them into a construction account. Rockwell then withdrew $13,000 of this amount and
began construction later that same month. Shortly after construction commenced, appellees and
Germanio began to question Rockwell's competency. It became apparent that Rockwell was
violating many of the specifications in Germanio's plans. Of foremost concern was the fact that
the concrete piers Rockwell poured into the ground were only ten feet deep, as opposed to the
sixteen feet Germanio had specified. (2) In addition, Rockwell had allowed too much time to lapse
between the drilling of the holes and the pouring of the concrete piers. (3) Consequently, every one
of the piers Rockwell poured was useless and had to be abandoned, new holes had to be drilled,
and new piers had to be constructed using a different technique. In addition to the problems
caused by the improperly poured piers, Rockwell damaged much of the home's interior, including
the hardwood floors and interior furnishings. At some point, city inspectors "red-tagged" the
construction project, effectively halting the repairs because of Rockwell's substandard work. Coe
testified that because of the additional work necessary to correct these mistakes, the job became
more complicated and expensive than originally anticipated.

 Upon discovering these mistakes, appellees immediately fired Rockwell. With no
contractor remaining to do the work, insufficient funds to hire a replacement, and no further ALE
coverage, appellees felt that they had no choice other than to move back into the home,
notwithstanding the unfinished repairs. Appellees used what money they had available to hire Coe
to make the repairs needed for the home to meet minimal living standards. Since then, appellees
have lived in the house for over four years despite several practical inconveniences, including
holes in the floor covered only by plywood, unusable bathrooms, and limited running water.

 In August 1996, appellees filed suit against State Farm. A jury trial followed. At
the conclusion of the evidence, the trial court submitted the case to the jury under theories of
breach of contract, breach of the common law duty of good faith and fair dealing, and violations
of the Texas Insurance Code and DTPA. The jury returned with a verdict in appellees' favor on
the contractual and statutory theories of liability. However, it declined to find that State Farm had
breached the duty of good faith and fair dealing or that it had acted in bad faith or with malice. 
Specifically, the jury found that State Farm (1) breached its insurance contract with appellees and
that the breach was a proximate cause of the damages to appellees' home, and (2) violated
provisions of the Insurance Code and DTPA and that these violations were a producing cause of
the damages to appellees' home. The jury awarded appellees $241,629 in damages. On
agreement of the parties, the trial court subtracted from that amount $63,345, which included a
credit for the $51,888.66 State Farm had already paid appellees in satisfaction of their claim. The
trial court then rendered judgment awarding appellees $178,284 in damages, prejudgment interest
of $57,262, and $192,500 in attorney's fees. 

 On appeal, State Farm does not challenge the jury's findings of liability. Rather,
it seeks a reversal of the damages award, claiming in four points of error that there is legally and
factually insufficient evidence of causation. In its remaining three points of error, State Farm
argues that an erroneous prejudgment interest rate was applied to the judgment, the damages
award exceeds the insurance policy's limitation on liability, and the judgment improperly awards
appellees their attorney's fees without the condition that they prevail on appeal. By a single cross-point, appellees assert that the trial court erred by refusing to award them additional damages
pursuant to article 21.55 of the Insurance Code because the evidence conclusively proved that
State Farm violated the statute. See Tex. Ins. Code Ann. art. 21.55, § 6 (West Supp. 2000).


DISCUSSION


Legal and Factual Sufficiency 

 In its first four points of error, State Farm challenges the legal and factual
sufficiency of the evidence supporting the amount of damages found by the jury to have resulted
from State Farm's contract breach and statutory violations. The standards of review for
evaluating the legal and factual sufficiency of the evidence in support of a jury finding are well
established. When reviewing a legal insufficiency or "no-evidence" point, we consider only the
evidence and inferences that tend to support the finding and disregard all evidence and inferences
to the contrary. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). We
will uphold the finding if more than a scintilla of evidence supports it. See id. More than a
scintilla of evidence exists where the evidence supporting the finding "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." Id. In reviewing the
factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the
finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and manifestly unjust. See Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989);
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Juries are given broad discretion in fixing the
amount of damages to award, and we may not substitute our judgment for that of the jury merely
because we reach a different conclusion. See Costa v. Storm, 682 S.W.2d 599, 604 (Tex.
App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.).


Breach of Contract

 We first address State Farm's contention that the evidence is legally and factually
insufficient to support the jury's finding that State Farm's breach of its contractual duty to pay a
reasonable amount for the necessary repairs was a proximate cause of appellees' damages. After
concluding that State Farm failed to comply with the terms of the policy, the jury was asked,
"What sum of money, if any, now paid in cash, would fairly and reasonably compensate Sheila
Fitzgerald and Charles Lanham for their damages, if any, that resulted from such failure to
comply?" The jury found that $171,000 would cover the reasonable and necessary costs of
repairing the damage caused by the plumbing leaks; $28,000 would compensate appellees for the
repair funds that were paid to and retained by Rockwell; and $27,629.72 would cover the
additional living expenses, moving expenses, and repair costs appellees expended to move back
into their home. 

 In three points of error, State Farm argues that the evidence is legally and factually
insufficient to support these amounts. It contends that its contract breach, i.e., its failure to pay
appellees a reasonable amount to make the necessary repairs, was too remote to constitute a legal--
much less proximate--cause of appellees' damages. State Farm maintains that, as a matter of law,
Rockwell's negligence was a new, independent, and intervening cause that broke the chain of
causation between its underpayment of appellees' claim and the damages that resulted to the home. 
It maintains that its underpayment did no more than furnish the conditions that made the hiring
of an incompetent contractor possible and that, at the very most, it is liable only for the amount
by which it underpaid appellees' claim. We disagree.

 The universal rule for measuring damages for a breach of contract is to determine
the amount that justly compensates the plaintiff for the loss or damage actually sustained. See
Lafarge Corp. v. Wolff, Inc., 977 S.W.2d 181, 187 (Tex. App.--Austin 1998, pet. denied) (citing
Phillips v. Phillips, 820 S.W.2d 785, 788 (Tex. 1991)). Thus, the non-breaching party generally
should be awarded neither less nor more than its actual damages. See Lafarge Corp., 977 S.W.2d
at 187. Actual damages may be recovered in a suit for breach of contract when the losses are the
natural, probable, and foreseeable consequences of the defendant's conduct. See Mead v. Johnson
Group, Inc., 615 S.W.2d 685, 687 (Tex. 1981); Winograd v. Clear Lake City Water Auth., 811
S.W.2d 147, 156 (Tex. App.--Houston [14th Dist.] 1991, writ denied). These damages must be
foreseeable and directly traceable to the wrongful act from which they resulted. See Stuart v.
Bayless, 964 S.W.2d 920, 921 (Tex. 1998); Mead, 615 S.W.2d at 687. If an intervening event
is reasonably foreseeable, it cannot be considered a new and independent cause that breaks the
chain of causation. See Phan Son Van v. Pena, 990 S.W.2d 751, 754 (Tex. 1999); Travis v. City
of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). 

 Under the facts presented here, we conclude that the amount of damages awarded
by the jury were foreseeable and directly traceable to State Farm's breach and that Rockwell's
negligence was not a superceding cause that broke the chain of causation. At trial, there was
substantial testimony that the prospect of hiring an incompetent contractor was a particularly
foreseeable result of underpaying appellees' claim, especially considering the burgeoning
construction market in 1995. Fitzgerald, Germanio, and even one of State Farm's own adjusters,
testified that at the time appellees' claim was pending, the Austin housing market was in an
upswing, most competent builders had more than enough work, and few, if any, competent
contractors would take on a project for a less-than-reasonable amount. Indeed, John Maxwell,
one of State Farm's own claims superintendents, conceded that it is entirely foreseeable that an
insurer's refusal to pay a reasonable amount in satisfaction of a valid claim might force a
policyholder to accept the lowest bid received without regard to the competence of the bidder.

 Appellees had already arranged for Coe to do the work soon after State Farm
indicated it would pay the claim. Had State Farm complied with the terms of the policy and paid
a reasonable amount for the repairs, Coe or another competent contractor could have begun
making the repairs, and the additional damages could have been avoided. But instead, by
underpaying the claim and threatening to terminate appellees' ALE coverage unless construction
began immediately, State Farm economically coerced appellees into accepting the settlement
amount and hiring an incompetent contractor to make the repairs.

 Certainly, one of the most foreseeable risks of underpaying a claim is that the
insured will not have enough funds to complete all the repairs or that the insured will be unable
to hire a contractor competent enough to make the repairs. Shoddy workmanship, even
unmitigated incompetence, are natural and probable consequences of hiring the lowest bidder to
make repairs for an amount that is less than reasonable. The fact that State Farm did not directly
force appellees to hire Rockwell specifically is immaterial. Fitzgerald and Lanham testified that,
apart from Capital Construction, which Germanio's uncontroverted testimony suggests was
unqualified and inexperienced, Rockwell was the only contractor appellees could locate who was
willing to perform the job for the amount State Farm allocated. Both Coe and David Kettle,
another local contractor, testified that no builder could have done the work competently for the
amount State Farm had allocated. Taken together, this testimony was sufficient for the jury to
reasonably conclude that State Farm's failure to honor the terms of the policy proximately caused
appellees' damages. Kettle's testimony that $196,193.57 was the amount necessary to repair the
home according to Germanio's plans and specifications is more than sufficient evidence to support
the $171,000 awarded. Having reviewed the evidence in the record, and remaining mindful of
the broad discretion that the jury is afforded in awarding damages, we are unable to conclude that
the evidence is legally or factually insufficient. Accordingly, we overrule State Farm's first point
of error. (4)

 In its third point of error, State Farm complains that the evidence is factually and
legally insufficient to support the jury's award of the $28,000 in repair funds withdrawn by
Rockwell. State Farm maintains that by awarding this amount, appellees are provided a double
recovery. We disagree.

 Although $28,000 of the funds provided by State Farm were used to pay Rockwell
for the repairs, Rockwell failed to perform the work in a competent manner. In fact, Rockwell
caused more damage than it remedied. As a result, the $28,000 paid to Rockwell was wasted. 
Just as we have already held that Rockwell's incompetence was foreseeable, we likewise conclude
it was foreseeable that any funds paid to such a contractor would be misused or wasted. In
arguing that this constitutes a double recovery, State Farm neglects to recognize the $63,345.54
credit that the trial court provided in the judgment. This amount included the entire $51,888
payment State Farm provided appellees in satisfaction of the claim. Because the judgment gave
State Farm credit for the entire amount it paid on the claim, including the money paid to
Rockwell, the $28,000 is not a double recovery. To be made whole, appellees are entitled to
recover the $28,000 in funds that, but for hiring an incompetent contractor, they would still have
to apply towards the repairs. Having concluded that there is legally and factually sufficient
evidence to support the jury's $28,000 award, we overrule State Farm's third point of error.

 In its fourth point of error, State Farm asserts that the evidence is legally and
factually insufficient to support the jury's finding that State Farm's contract breach proximately
caused the $22,500 in additional living expenses, moving expenses, and repair costs that the jury
found were necessary for appellees to move back into the home. Again, we disagree and find
more than adequate evidence to support the amount of damages awarded. As we have already
concluded, appellees' hiring of an incompetent contractor was a foreseeable result of State Farm's
breach. For many of the same reasons, it was also foreseeable that State Farm's underpayment
and its repeated delays in settling the claim, coupled with its termination of appellees' ALE
coverage could cause appellees to incur additional living and moving expenses, as well as the cost
of making repairs necessary to make the house habitable. These consequential damages were
foreseeable results of State Farm's breach, and we conclude that the evidence is legally and
factually sufficient to support the amount awarded by the jury. We overrule State Farm's fourth
point of error.


Insurance Code and DTPA Violations


 Even if we were to conclude that the damages awarded were not a foreseeable result
of State Farm's contract breach, the trial court's judgment nevertheless could be affirmed under
the alternative statutory theories of liability on which appellees also prevailed at trial. See
Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 274 (Tex. 1995) (where jury returns verdict
on two or more alternative theories, prevailing party may recover under alternative theory if
judgment on one theory is reversed on appeal). State Farm asserts in its second point of error that
the evidence is also legally and factually insufficient to establish that its Insurance Code and
DTPA violations were producing causes of appellees' damages. Again, State Farm does not
challenge the jury's findings of liability under the statutes. It only complains of the sufficiency
of the evidence supporting the amount of damages awarded. State Farm contends that, at the very
most, it is liable only for the amount by which it underpaid appellees' claim. We disagree.

 In response to questions three and nine, the jury found that State Farm violated the
Insurance Code and DTPA and that those violations were a producing cause of the same amount
of damages awarded pursuant to appellees' breach-of-contract claim. Specifically, the jury found
that State Farm violated the Insurance Code by "misrepresenting to a claimant a material fact or
policy provision relating to coverage at issue"; "failing to attempt in good faith to effectuate a
prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has
become reasonably clear"; or "refusing to pay a claim without conducting a reasonable
investigation with respect to the claim." See Tex. Ins. Code Ann. art. 21.21, § 4(10)(i), (ii),
(viii) (West Supp. 2000). State Farm was found to have violated the DTPA by engaging in an
"unconscionable action or course of action." Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (West
Supp. 2000). An unconscionable action or course of action is "an act or practice which, to a
consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity
of the consumer to a grossly unfair degree." Id. § 17.45(5) (West Supp. 2000).

 To award damages under the Insurance Code and DTPA, the jury was required to
find that the statutory violations were a "producing cause" of appellees' damages. See Provident
Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 193 (Tex. 1998); Weitzel v. Barnes, 691 S.W.2d
598, 600 (Tex. 1985); Tex. Bus. & Com. Code Ann. § 17.50(a). Producing cause is not
synonymous with proximate cause. A producing cause is an "efficient, exciting, or contributing
cause, which in a natural sequence, produced the injuries or damages complained of, if any." 
Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 182 (Tex. 1995); Rourke v. Garza,
530 S.W.2d 794, 801 (Tex. 1976). There may be more than one producing cause. See Haynes
& Boone, 896 S.W.2d at 182; Rourke, 530 S.W.2d at 801. Unlike the case with proximate cause,
foreseeability is not an element of producing cause. See Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 816 (Tex. 1997); Haynes & Boone, 896 S.W.2d at 182. Nevertheless,
if damages are too remote, too uncertain, or purely conjectural, they cannot be recovered. See
Arthur Andersen & Co., 945 S.W.2d at 816. There must be a showing of "causation in fact,"
which means that the defendant's act or omission must have been a "substantial factor" in bringing
about the injury, which otherwise would not have occurred. See Doe v. Boys Club of Greater
Dallas, Inc., 907 S.W.2d 472, 481 (Tex. 1995); Union Pump v. Allbritton, 898 S.W.2d 773, 775
(Tex. 1995).

 Because it is not necessary to conclude that the damages were a foreseeable result
of State Farm's statutory violations, (5) State Farm faces a substantially heavier burden in this
challenge, one that we conclude it fails to satisfy. For many of the same reasons we held that
State Farm's contract breach was a proximate cause of appellees' damages, we conclude that State
Farm's statutory violations were a producing cause in fact of appellees' damages.

 At trial, Coe, Germanio, and Ted Marules, Sr., an independent insurance claims
adjuster, all testified that State Farm's refusal to include in its estimate reasonable fees for the
general contractor's profit and overhead was contrary to industry practice. According to Coe,
State Farm's unwillingness to budge on that point presented an insurmountable hurdle in
negotiations. As stated previously, had State Farm agreed to pay these costs and settle the claim
in a timely fashion, Coe or another reputable, competent contractor could have begun making the
repairs immediately and further damages could have been avoided. But instead, as both Fitzgerald
and Lanham testified, State Farm refused to cover these costs, it unnecessarily delayed settling
the claim, and it refused to pay for the additional damages that resulted from those delays. (6) 
Fitzgerald also testified that, despite her repeated requests, State Farm refused to adjust its
estimate to take into account the work needed to repair one of the bedrooms, a cost that had been
overlooked.

 This testimony, together with the testimony previously discussed in relationship to
State Farm's contract breach, is some evidence to indicate that State Farm's (1) factual
misrepresentations; (2) failure to effectuate in good faith a prompt, fair, and equitable settlement
of appellees' claim; (3) initial refusal to pay appellees' claim without first conducting a reasonable
investigation; and (4) exploitation of appellees' lack of knowledge, ability, experience, or capacity
to a grossly unfair degree were all producing causes of appellees' damages. These statutory
violations were not "philosophic causes" in the sense that they were remote events that did no
more than furnish the conditions that made appellees' injuries possible. Rather, they were
efficient, exciting, or contributing causes of the damages found by the jury. Having reviewed the
record, we hold that there is more than a scintilla of evidence to establish that State Farm's
statutory violations were both causes-in-fact and substantial factors in causing appellees' damages. 
Furthermore, this evidence is not so weak as to render the jury's findings clearly wrong and
manifestly unjust. Accordingly, we overrule State Farm's second point of error.


Prejudgment Interest

 In its fifth point of error, State Farm maintains that the trial court erred in applying
a prejudgment interest rate of ten percent per annum to the damages award. In support of its
argument, State Farm cites a section of the 1999 version of the Texas Finance Code, which
provides that if no interest rate is specified in a contract "ascertaining the amount payable," the
contract earns interest at a rate of six percent per annum. See Act of May 24, 1997, 75th Leg.,
R.S., ch. 1008, § 1, 1997 Gen. Laws 3091, 3422 (Tex. Fin. Code Ann. § 302.002, since
amended). Prejudgment interest at a rate of ten percent is appropriate only if the contract fails
to specify an interest rate and does not fix the measure by which the amount payable can be
ascertained with reasonable certainty. See Great Am. Ins. Co. v. North Austin Mun. Util. Dist.
No. 1, 950 S.W.2d 371, 372-73 (Tex. 1997); Act of May 24, 1997, 75th Leg., R.S., ch. 1008,
§ 1, 1997 Gen. Laws 3091, 3435 (Tex. Fin. Code Ann. § 304.003(c), since amended). Because
property insurance policies are contracts ascertaining a "sum payable," see Great Am. Ins. Co.,
950 S.W.2d at 372-73, State Farm maintains that the trial court should have applied the six
percent rate mandated by section 302.002 of the Finance Code. We disagree.

 Section 302.002 applies only to cases sounding exclusively in contract. See
International Ins. Co. v. Dresser Indus., Inc., 841 S.W.2d 437, 447 (Tex. App.--Dallas 1992, writ
denied); Shell Pipeline Corp. v. Coastal States Trading, Inc., 788 S.W.2d 837, 849 (Tex.
App.--Houston [1st Dist.] 1990, writ denied). Had appellees only been awarded damages on the
basis of State Farm's contract breach, State Farm's argument would be more persuasive. (7) But as
we have already observed, the jury rendered judgment in appellees' favor on the statutory bases
of liability as well as the contractual grounds. In so doing, the jury awarded appellees damages
in amounts equal to those recovered for the contract breach. "When a party tries a case on
alternative theories of recovery and a jury returns favorable findings on two or more theories, the
party has a right to a judgment on the theory entitling him to the greatest or most favorable
relief." Boyce Iron Works v. Southwestern Bell Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988); see
also Hargrove v. Trinity Universal Ins. Co., 256 S.W.2d 73, 75 (Tex. 1953). Thus, because this
suit was also based on violations of the Insurance Code and DTPA, the trial court's application
of ten percent prejudgment interest, rather than the six percent rate prescribed by section 302.002,
was not error. See Cain v. Pruett, 938 S.W.2d 152, 158 (Tex. App.--Dallas 1996, no writ);
McCann v. Brown, 725 S.W.2d 822, 825 (Tex. App.--Fort Worth 1987, no writ) (both applying
prejudgment interest rate of ten percent to DTPA damage award). State Farm's fifth point of
error is overruled.


Policy Limit on Liability

 State Farm complains in its sixth point of error that the trial court's judgment was
improper because it exceeded the policy's $137,500 limitation on liability. Again, State Farm's
argument disregards the jury's findings of extra-contractual liability under the Insurance Code and
DTPA. Appellees did not merely sue on the policy for the amount of coverage; rather, they sued
for breach of contract and statutory violations, seeking the actual and foreseeable consequential
damages that naturally followed as a result. Because appellees prevailed on both grounds, it was
within the trial court's discretion to render judgment on appellees' statutory causes of action rather
than on their breach-of-contract theory. See Boyce Iron Works, 747 S.W.2d at 787. We overrule
State Farm's sixth point of error.


Attorney's Fees

 In its seventh and final point of error, State Farm argues that the judgment
erroneously awarded appellees their attorney's fees on appeal without the condition that appellees
prevail on appeal. To preserve a complaint for appellate review, a party must present to the trial
court a timely request, motion, or objection with sufficient specificity as to make the trial court
aware of the complaint, unless the specific grounds are apparent from the context. See Tex. R.
App. P. 33.1(a); see also City of Port Isabel v. Shiba, 976 S.W.2d 856, 860-61 (Tex.
App.--Corpus Christi 1998, pet. denied) (trial error regarding attorney's fees is not fundamental
error and must be preserved by timely objection). State Farm argues that it preserved error by
stating in its motion for new trial:

 Plaintiffs are not entitled to prevail and recover damages against State Farm
under any of their causes of action against State Farm, either the DTPA, art. 21.21
of the Texas Insurance Code, or for breach of contract; therefore, as a matter of
law, Plaintiffs are not entitled to an award of attorneys' fees.



This objection was not sufficiently specific. It failed to bring to the trial court's attention the
specific error State Farm complains of on appeal. Nowhere else in the motion for new trial or
the remainder of the record is there any objection, request, or motion with the required specificity
to alert the trial court that State Farm was objecting to the method by which attorney's fees were
to be calculated. Because State Farm failed to preserve any error for our review, we overrule this
point.


Appellees' Cross-Point

 In a single cross-point of error, appellees assert as cross-appellants that the district
court erred in refusing to award them an additional eighteen-percent penalty pursuant to article
21.55 of the Texas Insurance Code. (8) They argue the evidence establishes that State Farm violated
article 21.55 of the Insurance Code as a matter of law. Consequently, cross-appellants contend
that they are entitled to an additional eighteen-percent penalty, despite the fact that they failed to
plead a cause of action under article 21.55. We disagree.

 The pleading requirements of the Texas Rules of Civil Procedure are designed to
"give the adversary parties notice of each [party's] claims and defenses, as well as notice of the
relief sought." Perez v. Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex. 1991); Tex. R. Civ.
P. 45, 47(a). "Fair notice" under rule 47(a) requires that a party be able to reasonably infer a
cause of action from what is specifically pleaded or stated. See Boyles v. Kerr, 855 S.W.2d 593,
601 (Tex. 1993). While a cause of action may be reasonably inferred even if an element of that
cause of action is not specifically alleged, the pleadings must nevertheless provide the defendant
with reasonable notice of the claims being asserted. See id. at 599.

 Here, there were no allegations from which State Farm could reasonably infer that
cross-appellants intended to sue for damages under article 21.55. At no point during trial did
cross-appellants plead, allege, or even mention a cause of action under article 21.55. The only
causes of action pled were breach of contract, breach of the common law duty of good faith and
fair dealing, and violations of the DTPA and article 21.21 of the Insurance Code. It is also clear
from the record that the issue of liability under article 21.55 was not tried by consent. See Tex.
R. Civ. P. 67. Trial by consent is intended to cover the exceptional case where it clearly appears
from the record as a whole that the parties tried the unpled issue. See RE/MAX, Inc. v. Katar
Corp., 961 S.W.2d 324, 328 (Tex. App.--Houston [1st Dist.] 1997, pet. denied); see also Boyles,
855 S.W.2d at 601; White v. Sullins, 917 S.W.2d 158, 160 (Tex. App.--Beaumont 1996, writ
denied). In this case, there is absolutely no indication from the record that the parties ever
contemplated trying this issue.

 Cross-appellants nevertheless direct our attention to the proposed judgment they
delivered to the trial court the day preceding the rendition of judgment, claiming that this
document was in essence a supplemental pleading or trial amendment. We are not persuaded by
this argument. Cross-appellants fail to cite, and our research fails to locate, any authority for the
proposition that a party's draft of a proposed judgment granting relief pursuant to an unpled cause
of action, without more, may serve as a supplemental pleading or trial amendment. Absent any
such authority, we decline to treat cross-appellants' proposed judgment as a trial amendment. We
overrule cross-appellants' sole point. 


CONCLUSION


 Having overruled all of State Farm's seven points of error, as well as appellees'
cross-point, we affirm the trial court's judgment.



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 10, 2000

Publish Withdrawn from publication September 12, 2000. Tex. R. App. P. 47.3(c) 

1. State Farm explained that the policy's coverage for additional living expenses extended
only for the reasonable amount of time necessary to repair or replace the damaged property. State
Farm claimed that it had presumed construction had already commenced months earlier, despite
the fact that, until then, it had not provided appellees with any funds to finance the repairs and
its claims adjusters had visited the home--which remained completely unrepaired--on several
occasions.
2. Appellees' home rests on a pier-and-beam foundation. According to Germanio, the
piers must extend at least sixteen feet underground in order to rest on the limestone bedrock
instead of the unstable, shifting clay layer immediately beneath the house. 
3. Germanio testified that if too much time lapses after the holes are drilled, the clay lining
the inside of the hole dries out. Should this occur, the moisture from the freshly poured concrete
is absorbed by the clay, rendering the concrete piers unstable. According to Germanio, Rockwell
allowed the holes to remain open much longer than the recommended eight to twenty-four hours.
4. In connection with this point of error, State Farm nevertheless complains that by
upholding the damages award, we are venturing far beyond the scope of liability imposed by its
policy and, in effect, are imposing upon State Farm an extra-contractual duty to guarantee the
workmanship of all the independent general contractors its policyholders hire to make repairs. 
State Farm misconstrues the effect of our decision. Rather than holding State Farm liable as a
surety or guarantor of the work performed by appellees' general contractor, we merely conclude
that there is factually and legally sufficient evidence to support the amount of damages that the
jury found to have resulted from State Farm's contract breach and statutory violations. These
damages were natural and foreseeable consequences of State Farm's underpayment and are in no
way connected to any obligation to guarantee the independent contractor's work. Rather than
being held vicariously liable for Rockwell's conduct, State Farm is being held liable for the
natural and foreseeable consequences of its own actions. Had State Farm fulfilled its contractual
and statutory obligations, it could not be held liable for any amount of appellees' damages, no
matter how severe Rockwell's incompetence. 
5. See Arthur Andersen & Co., 945 S.W.2d at 816; Haynes & Boone, 896 S.W.2d at 182.
6. Germanio and Coe both testified that during the months following appellees' initial
discovery of the leak, the house incurred additional damages due to continued soil expansion and
foundation movement.
7. We note that a contract is one "ascertaining the amount payable" when it provides the
conditions upon which liability depends and fixes a measure by which the sum payable can be
ascertained with reasonable certainty, in light of the surrounding circumstances. See Great Am.
Ins. Co. v. North Austin Mun. Util. Dist. No. 1, 950 S.W.2d 371, 372-73 (Tex. 1997). In this
case, State Farm's liability is not reasonably ascertainable from the policy and surrounding
circumstances. Rather, its liability exceeded the policy's limits and was largely contingent on
consequential damages. Thus, even if we were to take only the contract cause of action into
account, appellees would be entitled to prejudgment interest of ten percent per annum. Cf. Perry
Roofing Co. v. Olcott, 744 S.W.2d 929, 930 (Tex. 1988).
8. That article provides: "Except as otherwise provided, if an insurer delays payment of
a claim following its receipt of all items, statements, and forms reasonably requested and required
. . . for more than 60 days, the insurer shall pay damages and other items as provided for in
Section 6 of this article." Tex Ins. Code Ann. art. 21.55, § 3(f) (West Supp. 2000). Those
damages include an additional 18 percent of the claim amount, together with reasonable attorney's
fees. See Tex. Ins. Code Ann. art. 21.55, § 6 (West Supp. 2000).


SPAN STYLE="font-family: CG Times">Filed: August 10, 2000

Publish Withdrawn from publication September 12, 2000. Tex. R. App. P. 47.3(c) 

1. State Farm explained that the policy's coverage for additional living expenses extended
only for the reasonable amount of time necessary to repair or replace the damaged property. State
Farm claimed that it had presumed construction had already commenced months earlier, despite
the fact that, until then, it had not provided appellees with any funds to finance the repairs and
its claims adjusters had visited the home--which remained completely unrepaired--on several
occasions.
2. Appellees' home rests on a pier-and-beam foundation. According to Germanio, the
piers must extend at least sixteen feet underground in order to rest on the limestone bedrock
instead of the unstable, shifting clay layer immediately beneath the house. 
3. Germanio testified that if too much time lapses after the holes are drilled, the clay lining
the inside of the hole dries out. Should this occur, the moisture from the freshly poured concrete
is absorbed by the clay, rendering the concrete piers unstable. According to Germanio, Rockwell
allowed the holes to remain open much longer than the recommended eight to twenty-four hours.
4. In connection with this point of error, State Farm nevertheless complains that by
u