**Robert D. TIPS, Appellant,**

v.

**HARTLAND DEVELOPERS, INC., Appellee.**

No. 04–96–00722–CV.

Court of Appeals of Texas, San Antonio.

Jan. 7, 1998.

Rehearing Overruled Feb. 17, 1998.

James K. Jones, Jr., Peter F. Bagley, Jones & Gonzalez, L.L.P., Laredo, for Appellant.

John L. McClung, Susca, McClung & Paul, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is a suit arising from a contract under which appellee, Hartland Developers, Inc., agreed to build an airplane hangar for appellant, Robert Tips. Alleging that Tips repudiated the agreement before the contract was fully performed, Hartland sued Tips · for breach of contract, unjust enrichment, and fraud. Tips counterclaimed, claiming breach of contract and violations of the Texas Deceptive Trade–Practices Act. After a bench trial, the trial judge awarded Hartland damages for breach of contract, offset by damages incurred by Tips for the work remaining. In its findings of fact and conclusions of law, the trial court stated that Hartland could also recover under theories of unjust enrichment and quantum meruit. It denied all causes pleaded by Tips. We affirm the judgment but remand for modification of the damages award.

### STATEMENT OF FACTS

In 1985, Tips and Hartland entered into an agreement under which Hartland would construct an airplane hangar for Tips. The contract obligated Hartland to build the hangar on land leased to Tips or one of his entities by the City of San Antonio. Under the agreement, Hartland was to prepare the drawings and plans and specifications for the hangar and to secure all permits for its completion. The initial contract price was $229,491, but the parties agreed to two change orders: a modification of the hangar doors and the installation of a mezzanine for offices. The additions brought the total contract to over $300,000. The parties agreed that Tips would pay this sum in three installments: the first due upon acceptance of the contract, the second due upon delivery of the steel building for the hangar, and the third due upon completion of the project and issuance of a certificate of completion from an engineer representing Tips.

At some point during construction, Hartland ceased work on the project. In its pleadings and at trial, Hartland claimed that Tips had anticipatorily repudiated the agreement because of lack of funds. Tips claimed that he refused to pay the final installment because Hartland's work was deficient. According to Tips, Hartland had provided no ramp for access in and out of the hangar, had not completed the electrical work for the project, and had failed to comply with San Antonio fire code requirements. Consequently, Tips was unable to secure a certificate of occupancy from the city.

The trial court awarded Hartland the amount owing on the contract, less the cost of completing the office mezzanine. Hartland also received attorneys' fees and pre- and post-judgment interest, assessed at ten percent of recovery. The court allowed Tips an offset of $65,000 for Hartland's failure to provide ramp access to the hangar. The trial court found that ·the items needed to bring the building within the requirements of the

city fire codes were not contemplated by the parties in the agreement.

Tips appeals in six points of error, claiming (1) that the trial court failed to consider that implied covenants in a contract require a builder to deliver a building that complies with relevant building codes and regulations; (2) that the evidence was legally or factually insufficient to support the finding that the items necessary to bring the structure into compliance with the building code were not within the scope of the contract; (3) that Hartland had a duty to deliver a structure that was usable for its intended purposes; (4) that the evidence was legally or factually insufficient to support a finding that Hartland substantially performed under the contract; (5) that Tips was entitled to additional offset damages, based on defects in the hangar; (6) that the trial court erred in calculating prejudgment interest at ten percent; (7) that the trial court erred in assessing prejudgment interest twice; and (8) that the trial court erred in calculating attorneys' fees.

### Implied Covenant

■ Tips's first three points of error are based on his argument that implied in the agreement between himself and Hartland was a covenant to deliver a structure that meets building code requirements. Tips seeks an offset of damages for the amount it would take to bring the hangar into compliance with city fire code requirements. He asks this court to hold that all contractors, when entering into building contracts, impliedly agree to comply with relevant municipal and county codes so that the building is suitable for its intended purpose. Hartland asserts that there is no such implied covenant in Texas and that, even if there were, the parties in this case explicitly agreed to modify it. We find that such a covenant is implied in construction contracts, but we agree with Hartland that these parties modified the covenant by agreement.

Neither we, nor the parties, have found a Texas case that determines whether an implied covenant exists in construction contracts that the contractor comply with relevant municipal codes. We cannot dispute Hartland's assertion that Texas courts have been reluctant to identify implied covenants. Such covenants will be implied only "when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purpose of the parties in the contracts made.... [I]t must appear therefrom that it was so clearly in the contemplation of the parties so that they deemed in unnecessary to express it ... or that it was necessary to imply such [a] covenant in order to give effect to and effectuate the purpose of the contract as a whole." *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039, 1040–1 (1928); *see also Calvin V. Koltermann, Inc. v. Underream Piling Co.*, 563 S.W.2d 950, 957 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.).

■ Every contract incorporates existing laws, and a party's obligation under a contract is measured by the standard of the laws existing at the time the contract is made. *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex.1987). These principles provide a starting point for our discussion, but they do not answer the ultimate issue. The existing codes require newly constructed buildings to meet certain standards; however, the codes do not dictate whether the responsibility for ensuring compliance rests on the building owner or the building contractor. We believe that there is ample case law to suggest that, in the absence of a contrary agreement, the burden should fall on the builder.

In making this determination, we have considered the rationale behind the tort duties imposed on those entering contracts. As one court noted, "[i]mplicit in every contract is a common-law duty to perform the terms of the contract with care, skill, and reasonable experience." *Sipes v. Langford*, 911 S.W.2d 455, 457 (Tex.App.—Texarkana 1995, writ denied). Texas courts have also recognized that builders have a duty to deliver buildings that are habitable. *See Parkway Co. v. Woodruff*, 857 S.W.2d 903, 910 (Tex.App.—Houston [1st Dist.] 1993), *aff'd as modified*, 901 S.W.2d 434 (Tex.1995). We find the rationale for imposing such a duty

particularly instructive. In *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168 (Tex.1983), the supreme court stated that builders carry the burden of delivering structures in a good and workmanlike manner because (1) they should be in the business of constructing buildings free of latent defects; (2) buyers are not in a position to discern defects; (3) buyers cannot normally rely on their own judgment in such matters; (4) buyers rely on builders to construct in a good and workmanlike manner; and (5) the builder is the only one who knows the manner in which the building was built. *Gupta*, 646 S.W.2d at 169.

We believe that these tort principles are relevant to our consideration of implied contract covenants. Contractors, not owners, are in the best position to know about and comply with relevant building codes. Furthermore, buyers are not in the business of building; they are in the business of occupying. They rely on builders to furnish structures that can be occupied. An occupation permit cannot be obtained for a building that does not meet fire codes.

At least one Texas court has approved an action for breach of contract where builders delivered a home that was not constructed in a good and workmanlike manner. In *Phillips v. Wick*, 288 S.W.2d 899 (Tex.Civ.App.—Waco 1956, writ ref'd n.r.e.), the court held that construction of a home with a faulty foundation constituted a breach of contract. *Phillips*, 288 S.W.2d at 901. While it is true that in that case, the relevant contract included a provision that the work would be performed in a good and workmanlike manner, an implied covenant would be equally binding. *See Lilac Variety, Inc. v. Dallas Texas Co.*, 383 S.W.2d 193, 196 (Tex.Civ. App.—Dallas 1964, writ ref'd n.r.e.) (holding that implied covenants are as binding as express covenants); *Phillips*, 288 S.W.2d at 901 (breach of contract claim is for breach of duty arising from contract, either express or implied).

Several other jurisdictions have found such implied covenants in construction contracts. In *Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 399 (1964), the supreme court of Colorado held that municipal code requirements regarding sewage disposal were inherent in an agreement between builders and purchasers of homes. In *Schiro v. W.E. Gould & Co.*, 18 Ill.2d 538, 165 N.E.2d 286 (1960), an Illinois court held that relevant provisions of a city code with regard to water and plumbing were integral parts of a contract for the purchase of land and construction of a building. *See also Koval v. Peoples*, 431 A.2d 1284, 1286 (Del.Super.1981) (contract to build a water well impliedly included promise that water would meet city drinkability codes); *C & F Maintenance and Property Management, Inc. v. Eliason and Knuth Drywall Co., Inc.*, 418 N.W.2d 44, 45 (Iowa 1988) (contractor may be found negligent for failing to comply with building code requirements); *Denice v. Spotswood I. Quinby, Inc.*, 248 Md. 428, 237 A.2d 4, 9 (1968) (city codes governing distance between floor and ceiling in house were implied in construction contract). The rationale for these holdings is plain: a builder is uniquely situated to know or discover compliance requirements and to bid his or her contract accordingly.

 We hold that a cause of action is available to plaintiffs for breach of contract where a contractor has failed to comply with building codes relevant to the intended use of the structure. While we agree that findings of implied covenants are to be made sparingly, we believe this holding squares with Texas law, which holds that implied covenants will be found where necessary to effectuate the parties' intentions and purposes in contracting. *Underream Piling Co.*, 563 S.W.2d at 957. Certainly buyers, when seeking to have buildings constructed, intend that the building will meet the relevant standards that make the building usable. An implied covenant to comply will be presumed; however, this presumption may be countered with evidence that the parties agreed differently. A breach of the covenant is a breach of contract. *See Schiro*, 165 N.E.2d at 291 (code violations are "tantamount to a breach of contract").

 In the case before us, we believe there is sufficient evidence to support the trial court's finding that the parties agreed to address the fire code requirements in change orders because of Tips's uncertainty about how the structure would be used. Hartland

knew the intended purpose of the mezzanine. It was to contain offices, which meant stricter code requirements than those contained in the contract. The City of San Antonio approved the plans conditioned upon Hartland's meeting these requirements in the mezzanine, and Hartland's representative, Doug Crossland, agreed in writing to meet these requirements.

There was some testimony from both Crossland and David Lavelle, Tips's representative, that the parties did not initially know what kind of fire protection would be required because of uncertainty about whether adjacent structures would be torn down and about the size of the hangar itself. Both men testified that Hartland had not included fire protection in its bid and that Tips and his representative knew this to be the case. Crossland testified that it would have been a waste of his client's time and money to bid and build items that might turn out to be unnecessary. The trial court, after determining that the contract was ambiguous as to the scope of work it required, considered this extrinsic evidence and determined that the contract did not contemplate that code compliance was included in Hartland's original bid. There is evidence that the parties discussed code requirements and intentionally left the issue for another day.

In reaching our decision on this point, we dispose of Tips's second and third points of error. There is sufficient evidence in the record to support the trial court's findings on the scope of the agreement. We agree that Hartland had a general duty to deliver a structure fit for its intended purpose, including compliance with code requirements. But we also find that the parties made their own arrangements that modified the general duty.

## POINT OF ERROR FOUR: SUBSTANTIAL PERFORMANCE

In his fourth point of error, Tips claims that the evidence is legally or factually insufficient to support the trial court's finding that Hartland had substantially performed under the agreement.

We review a trial court's findings of facts under the same standard as that applied to jury verdicts for factual sufficiency. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). Thus, we must weigh all the evidence in the record and overturn the findings of fact only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Legal sufficiency is tested by looking only at the evidence that favors the finding. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is more than a scintilla of evidence to support the finding, it must be upheld. *Id.*

We agree with Tips that Hartland had not substantially performed under the contract. However, we find this point irrelevant to the resolution of this case. Substantial performance is a doctrine that allows *breaching* parties who have substantially completed their obligations to recover on a contract. WHITE & SUMMERS, CONTRACTS § 11–18(b) (3rd ed 1987). Hartland was not a breaching party. A contractor can recover on a contract when the failure to substantially perform is the fault of the other party. A party injured by the anticipatory breach of another may elect to sue for damages under the contract. *See id.* at 632 & n. 91 (if owner repudiates construction contract, contractor may sue in damages or for restitution); *Taylor Pub. Co. v. Systems Marketing Inc.*, 686 S.W.2d 213, 217 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) (when party obligated to make fixed payment absolutely repudiates the agreement, the obligee is entitled to recover action for damages and receive the present value of the payments payable under the agreement).

The trial judge based his damage assessment on anticipatory repudiation of contract. The evidence that Tips's representative, Lavelle, instructed Hartland to cease work on the project because Tips no longer could afford to make payments was sufficient to support this finding. *See Tennessee Gas Pipeline Co. v. Lenape Resources Corp.*, 870 S.W.2d 286, 302 (Tex.App.—San Antonio

1993) (anticipatory repudiation occurs when a party repudiates a contract before time for performance), *aff'd in part, rev'd in part,* 925 S.W.2d 565 (Tex.1996).

## POINT OF ERROR FIVE:
### OFFSET DAMAGES

■ In his fifth point of error, Tips claims that the trial judge erred in not offsetting Hartland's award for its failure to comply with fire codes and for Hartland's failure to provide electrical connections to the hangar. Tips also claims he should be compensated $11,000 for a temporary access ramp he was forced to construct in anticipation of a permanent ramp being installed. Hartland only addresses the fire code requirements, by arguing that it had not yet reached an agreement with Tips on fire code compliance. As we discuss above, we agree with this contention. Additionally, we find that the $65,000 offset for the construction of a permanent ramp is sufficient compensation for that deficiency. However, we agree with Tips that the damages award must be offset by the cost of providing electrical outlets to the hangar.

■ Tips is entitled to an offset for electrical connections under a breach of contract theory.[1] Damages for breach of contract are the contract price, less the cost of completion. *Sage Street Assoc. v. Northdale Const. Co.,* 937 S.W.2d 425, 426 (Tex.1996). The trial judge did not address in his findings of fact and conclusions of law whether the electrical connections were contemplated by the contract, but there was testimony at trial that they were, and electrical wiring is listed among Hartland's duties in the contract. A witness for Hartland admitted under cross examination that the work was part of the agreement and that it had not been completed. Tips testified that he had spent $23,000 to install connections. Hartland's damages should be further offset by this amount.[2]

### Point of Error Six: Prejudgment Interest

■ In his sixth point of error, Tips claims that the trial court incorrectly assessed prejudgment interest at ten percent. The supreme court has recently spoken on this issue; however, we do not believe its new opinion invalidates the award before us, and we overrule this point of error.

Texas Revised Civil Statutes article 5069—1.03 provides that when no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per year will be allowed on all contracts from which the amount payable can be ascertained. TEX. REV.CIV. STAT. ANN. art. 5069—1.03 (Vernon 1987) (repealed; now codified at TEX. FIN. CODE ANN. § 302.002 (Vernon 1998)). If no amount payable is ascertainable, interest will be assessed at ten percent. *Id.* at art. 5069—1.05 (repealed; now codified at TEX. FIN.CODE § 304.003 (Vernon 1998)).

Appellate courts have recently noted a trend toward strict construction of this statutory requirement, and Hartland relies on this trend. *See Great American Ins. Co. v. North Austin Mun. Utility Dist. No. 1,* 933 S.W.2d 737, 738–9. (Tex.App.—Austin 1996), *rev'd,* 950 S.W.2d 371 (Tex.1997); *Graco Robotics, Inc. v. Oaklawn Bank,* 914 S.W.2d 633, 646 (Tex.App.—Texarkana 1995, no writ). In *Great American Ins. Co.,* the Austin court of appeals pointed out that most appellate courts have interpreted this trend to mean that "if any extrinsic evidence is needed to determine the amount of contract damages, article 5.09—1.03 does not apply." *Great American Ins. Co.,* 933 S.W.2d at 739. Hartland argues that because extrinsic evidence is required to determine the offset amounts to be applied to Hartland's award of damages the ten percent assessment was appropriate.

The supreme court recently reversed the Austin court of appeals and affirmed that the statutory requirement is to be liberally applied. *Great American Ins. Co. v. North Austin Mun. Utility Dist. No. 1,* 950 S.W.2d

---

1. This would be true under a theory of substantial performance, as well. If recovery were based on a finding of substantial performance, the award would nonetheless be offset by the cost of remedying any defects.

2. To the extent that any of the electrical costs were included in the offset for the mezzanine, this amount should be reduced.

371, 373 (Tex.1997). The court stated that even if extrinsic evidence is required to affix damages, six percent is the correct assessment "so long as the contract fixes a measure by which the sum payable can be ascertained with reasonable certainty in light of the attending circumstances." *Id.*

We do not believe this holding affects the case before us. The contract before the court in *Great American Insurance Company* provided the court a clear *method* for determining damages under the contract, although extrinsic evidence was required to reach the correct *amount. Id.* at 374. Here, the contract, while providing a clear indication of how the work was to be paid for, provided the trial court no method by which to determine damages. With no method for assessing damages available from the contract, the trial court correctly assessed prejudgment interest at ten percent.

### Point of Error Seven

■ In his seventh point of error, Tips claims that the trial court erred to the extent that it imposed a double calculation of prejudgment interest. The trial judge issued two judgments with different commencement dates for the assessment of post-judgment interest. A motion to correct the first judgment, with a suggested corrected judgment, is missing from the transcript.

The parties agree on the error. Because the award already included pre-judgment interest, the correct date for beginning post-judgment interest was May 8, 1996, the date the judgment was signed. The erroneous judgment set the date at January 22, 1986, the date of the breach, and is wrong. Because the parties agree on this point, we declare that the correct judgment is that beginning the assessment of interest on May 8, 1996.

### Point of Error Eight

In his final point of error, Tips claims that, because prejudgment interest was miscalculated, the assessment of attorneys' fees is also miscalculated. To the extent that the award is affected by this oversight or by the additional offset for electrical repairs, we sustain this point of error. On remand, attorneys' fees must be proportionately reduced.

### CONCLUSION

The trial judge heard sufficient evidence to determine that Tips had anticipatorily breached his agreement with Hartland. We remand only for a modification of damages to include an offset for expenses Tips incurred in finishing the electrical wiring and a proportionate reduction of attorneys' fees. Further, we declare that the correct judgment of the trial court is that commencing the accrual of post-judgment interest on May 8, 1996.