Opinion issued March 15, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00390-CV

———————————

1.9 Little York, LTD., Appellant

V.

allice
trading inc.,
Appellee



 



 

On Appeal from the County Civil Court at Law No. 1

Harris County, Texas



Trial Court Case No. 956852

 



MEMORANDUM OPINION

          Appellant,
1.9 Little York, Ltd. (“Little York”), challenges the trial court’s judgment,
entered after a jury trial, in favor of appellee, Allice
Trading Inc. (“Allice Trading”), in Allice Trading’s suit for breach of contract and quantum
meruit.  In its first two issues, Little
York contends that the evidence is legally and factually insufficient to
support Allice Trading’s recovery on its breach-of-contract
claim and the jury’s damage award.   In
its third issue, Little York contends that that the trial court erred in denying
Little York additional time to present rebuttal witnesses.

          We affirm.

Background

           In its second amended petition, Allice Trading alleged that Little York, the owner and
general contractor of a warehouse construction project, had hired Allice Trading to provide “site preparation, utilities
installation, and concrete work” for the project.  Pursuant to their contract, Little York was
to pay Allice Trading $315,292.10 for its
services.  Allice
Trading sought damages in the amount of $28,529.21 for breach of contract and
quantum meruit.  

          In
its counterclaim, Little York alleged that Allice
Trading “abruptly stopped” working on the project and left “the job incomplete
and wholly unacceptable.”  Little York
specifically claimed that Allice Trading had failed
to complete a detention pond, which was required for Little York to obtain a
water detention permit from Harris County. 
Little York asserted that any alteration to the “scope” of the work
required by the contract was done “unilaterally and without agreement” by Allice Trading.  As a
result, the construction site had deteriorated to the point that Little York
needed to undertake “a total renovation of the project.”  Little York alleged, thus, that Allice Trading breached the contract by leaving the project,
and it sought actual and consequential damages to salvage the project.

          At
trial, Allice Trading owner Dan Allice
testified that he had previously worked with Little York’s owner, Moe Nasr, on
two prior projects.  In his original
estimate, Allice Trading was to provide 200 loads of
dirt for the project, but Nasr contacted him and explained that “the dirt
portion was a bit over his budget.”  Nasr
suggested that he could supply the dirt at a less expensive price than Allice Trading, so the two agreed that Nasr would supply
the dirt for the project and Allice “deduct[ed] the dirt cost” from his estimate.  

          While
on site, Allice took direction from Mario Lanza, the engineer and project manager for the Little York
project.  Lanza
was at the site every day and, to Allice’s knowledge,
served as Nasr’s representative. 
Although the original agreement called for Allice
Trading to remove the driveway used for construction vehicles, Lanza instructed Allice that the
removal was not needed.  Lanza also instructed Allice to perform
at the construction site several other jobs that were not included in the
original contract, but were added to the final estimate.   

          At
one point, Allice Trading had “completely finished”
the detention pond and was preparing to add a pilot channel to connect the
ingoing and outgoing pipes in the pond.  Before
Allice Trading could begin pouring the concrete for
the pilot channel, Lanza informed it that Little York
had “ran out of dirt for the foundation” of the warehouse.  Lanza then
instructed Allice Trading to “pull the dirt” that
Little York needed “from the pond” and the adjacent “green space.”  As a result, although the foundation was
finished, the “green space” and the detention pond needed more dirt.  Allice then
“continually” asked Lanza for the dirt required to
fill the “green space” and the detention pond, but Lanza
only brought in enough to fill the “green space.”  When Allice
Trading had “maybe four more days” left on the project, Lanza
“stopped bringing dirt in.”  Without
enough dirt in the detention pond, Allice Trading
could not construct the pilot channel.  Allice “called [Lanza] for the
next eight months . . . every couple of weeks . . . asking for dirt,” but each
time Lanza assured Allice
that he would bring it in “later.”  After
eight months of Allice Trading asking Lanza for dirt, Lanza informed Allice that because the detention pond “may need to hold
additional water,” Allice Trading was no longer
required to fill in the detention pond or construct the pilot channel.

          Because
Allice Trading had “been waiting all this time to
finish . . . the pilot channel,” which was no longer required,
it sought payment on the final invoice and “tried to bill the job.”  Allice noted that $31,229.21
was due on the invoice, and he “discounted” it $3,000 to account for the fact
that the pilot channel was not constructed, at a cost of approximately $1,678,
and the driveway was not removed.   Allice sent to Little York invoices demanding payment of
$28,229.21, but, when he went to Little York’s office, Nasr told him to “get a
lawyer and sue” because Allice Trading had “walked
off the job.”   On cross-examination, Allice admitted that he had negotiated the original
contract with Nasr, not Lanza.  He also admitted that the pond lacked a
“restrictor pipe,” but he asserted that this was not brought to his attention
until the trial.   

          Lanza testified that he had never represented that he was
authorized to modify the contract between Allice
Trading and Little York.  He did not tell
Allice not to remove the driveway, not to fill in the
detention pond, or not to construct the pilot channel.  Lanza also did not
agree to obtain the dirt to fill in the detention pond.  He explained that Allice
Trading should have obtained the dirt to fill in the detention pond and
submitted a change order to seek compensation from Nasr.  On cross-examination, Lanza
admitted that he was at the project site about “every other day.”

          Nasr testified
that he was the only person from Little York with the authority to modify the parties’
contract and, at the outset, their agreement was for Allice Trading to take any dirt needed for the rest of the
project out of the detention pond.  Allice Trading was then to determine how much dirt it
needed to fill in the detention pond and give Nasr a change order for any
needed dirt.  When Allice
contacted Nasr eight months after “walk[ing] away
from the project,” Nasr told him to “come finish the job” and only then would Allice Trading “get paid in full.”  Nasr held the remaining 10% of the contract
price as retainage “in case the contractor does not show up at the end,” a
practice common in the construction industry. 
He asserted that as a result of Allice Trading
leaving the detention pond unfinished, it would cost approximately $40,000 to
fully complete the detention pond.

          The
jury found that both Allice Trading and Little York
had failed to comply with their agreement but Allice
Trading’s failure was excused.  The jury also
found that Allice Trading’s breach was not material
while Little York’s breach was material. 
The jury further found that a sum of $28,229.21 would fairly and
reasonably compensate Allice Trading for Little
York’s unexcused failure to comply with the agreement.  Based on the jury’s findings, the trial court
entered judgment in favor of Allice Trading, awarding
it $28,229.21 on its breach-of-contract claim. 
Little York filed a motion for a judgment notwithstanding the verdict
and a motion for new trial, arguing that the evidence is legally and factually
insufficient to support the verdict and the jury’s damage award is excessive.

Sufficiency of the Evidence

          In its
first issue, Little York argues that the evidence is legally and factually
insufficient to support the jury’s findings because it is “undisputed” that Allice Trading committed the first material breach by
abandoning the project and, as a result, Allice
Trading could only recover on a theory of substantial performance for which it
did not plead or request a jury issue.  In its second issue, Little York
argues that the evidence is legally and factually insufficient to support the
jury’s damage award because Allice’s testimony
regarding the cost of completion of the pilot channel was based on an
“approximate guess” and “speculative testimony.”

We
will sustain a legal-sufficiency or “no-evidence” challenge if the record shows
one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact
is no more than a scintilla, or (4) the evidence establishes conclusively the
opposite of the vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005).
In conducting a legal-sufficiency review, a “court must consider evidence in
the light most favorable to the verdict, and indulge every reasonable inference
that would support it.”  Id. at 822.  The term “inference” means, 

In the law of
evidence, a truth or proposition drawn from another which is supposed or
admitted to be true.  A process of
reasoning by which a fact or proposition sought to be established is deduced as
a logical consequence from other facts, or a state of facts, already proved. .
. .

 

Marshall Field Stores,
Inc. v. Gardiner, 859 S.W.2d 391, 400 (Tex. App.—Houston
[1st Dist.] 1993, writ dism’d w.o.j.)
(citing Black’s
Law Dictionary 700 (5th ed. 1979)). 
For a jury to infer a fact, “it must be able to deduce that fact as a
logical consequence from other proven facts.” 
Id.  

If there is more than a scintilla of evidence to
support the challenged finding, we must uphold it.  Formosa Plastics Corp. USA v. Presidio Eng’rs
& Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  “‘[W]hen the evidence offered to prove a
vital fact is so weak as to do no more than create a mere surmise or suspicion
of its existence, the evidence is no more than a scintilla and, in legal
effect, is no evidence.’”  Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 601 (Tex. 2004) (quoting Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983)).  However, if the evidence at
trial would enable reasonable and fair-minded people to differ in their
conclusions, then jurors must be allowed to do so.  City of
Keller, 168 S.W.3d at 822; see also King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 751 (Tex. 2003).  “A
reviewing court cannot substitute its judgment for that of the trier-of-fact,
so long as the evidence falls within this zone of reasonable disagreement.”  City of
Keller, 168 S.W.3d
at 822.  

In a factual-sufficiency review, we must examine both the
evidence supporting and contrary to the verdict.  See Dow Chem. Co. v.
Francis,
46 S.W.3d 237, 242 (Tex. 2001); Plas–Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We note that the jury is the sole judge of the
witnesses’ credibility, and it may choose to believe one witness over another;
a reviewing court may not impose its own opinion to the contrary.  See Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  In our review of the factual sufficiency of
the evidence, we must consider and weigh all of the evidence, and we will set
aside a verdict only if the evidence is so weak or the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and
manifestly unjust.  Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

Breach
of Contract

          In order to prevail on its breach-of-contract
claim, Allice Trading was required to prove (1) the
existence of a valid contract between it and Little York, (2) its performance
or tender of performance, (3) Little York’s breach of the contract, and (4) its
damages as a result of the breach.  Prime
Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d
631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  “A breach of contract occurs when a party
fails or refuses to do something he has promised to do.”  B & W Supply, Inc. v. Beckman, 305 S.W.3d 10, 16 (Tex.
App.—Houston [1st Dist.] 2009, pet. denied).  

          Little York argues that because Allice Trading abandoned the project in January 2009,
leaving the detention pond unfinished, Allice Trading
committed the first breach of the contract. 
As a result, Little York asserts that Allice
Trading would have to recover under the doctrine of substantial performance.  However, the jury found that any breach by Allice Trading was excused and Little York’s failure to
comply with the agreement was material. 
The trial court instructed the jury that a failure to comply with an
agreement may be excused by “the other party’s previous failure to comply with
a material obligation of the . . . agreement” or by “the other party’s prior
repudiation of the . . . agreement.” 
Thus, within its substantial-performance argument, Little York
challenges the sufficiency of the evidence supporting the jury’s finding that
any breach by Allice Trading was excused.

          Allice
Trading argues that the evidence supports the jury’s finding that Allice Trading’s breach of the contract was excused.  It asserts that it completed its obligations
with the exception of the pilot channel and its failure to construct the pilot
channel was excused either by Little York’s failure to supply the necessary
materials under the contract or Little York’s repudiation of the contract.

          A material breach by one party to a
contract can excuse the other party from any obligation to perform.  Mustang Pipeline Co. v. Driver Pipeline
Co.,
134 S.W.3d 195, 196 (Tex. 2004) (per curiam) (“It is a fundamental principle of
contract law that when one party to a contract commits a material breach of
that contract, the other party is discharged or excused from further performance.”).  The materiality of a breach, i.e., the question
of whether a party’s breach of a contract will render the contract unenforceable,
generally presents a dispute for resolution by the trier of fact.  See Cont’l
Dredging, Inc. v. De–Kaizered, Inc., 120 S.W.3d
380, 394–95 (Tex. App.—Texarkana 2003, pet. denied) (citing Hudson v.
Wakefield,
645 S.W.2d 427, 430 (Tex. 1983)).  

          There are five significant factors to
consider in determining whether a failure to perform is material: 

(a) the extent
to which the injured party will be deprived of the benefit which he reasonably
expected;


 

(b) the extent
to which the injured party can be adequately compensated for the part of that
benefit of which he will be deprived; 

 

(c) the extent
to which the party failing to perform or to offer to perform will suffer
forfeiture;


 

(d) the
likelihood that the party failing to perform or to offer to perform will cure
his failure, taking account of the circumstances including any reasonable
assurances;
and

 

(e) the extent to which the behavior of
the party failing to perform or to offer to perform comports with standards of
good faith and fair dealing. [[1]]

 

See
Mustang Pipeline,
134 S.W.3d at 200 (quoting Restatement
(Second) of Contracts § 241 (1981)).

          A
contractor who is unjustifiably prevented by an owner from finishing his work
may sue and recover as provided by the contract.  Farris v. Smith Erectors, Inc., 516 S.W.2d 281, 283 (Tex.
App.—Houston [1st Dist.] 1974, no pet.). 
Also, delay caused by an owner on a construction project may constitute
a breach of contract.  See, e.g., Beard Family P’ship
v. Commercial Indem. Ins. Co., 116 S.W.3d
839, 847 (Tex. App.—Austin 2003, no pet.) (holding that owner
breached contract for construction project when owner’s initial plans were
inadequate and required several revisions over course of project); see also Anderson Dev. Corp. v. Coastal
States Crude Gathering Co., 543 S.W.2d 402, 406 (Tex. Civ. App.—Houston
[14th Dist.] 1976, writ ref’d n.r.e.) (holding that
contractor’s failure to timely perform under contract was excused when it was
prevented from timely performing by owner).

Here, there is
evidence that Little York prevented Allice Trading
from completing its contract.  Allice testified that the two parties had agreed that
Little York would supply the necessary dirt, and it submitted into evidence a
change order removing the cost of dirt from the amount due to Allice Trading.  And,
when Allice Trading’s only remaining obligation was
to install the pilot channel in the detention pond, Lanza
told him to remove dirt from the detention pond.  Little York then failed to supply the dirt
needed to fill in the detention pond, halting its completion.  Lanza, who had been
directing the contractors on site, then informed Allice
Trading that Little York no longer needed the detention pond to be
completed.  

Viewing this evidence
in the light most favorable to the verdict, we conclude that the jury could
have reasonably found that Little York committed the first breach of the
contract, either by failing to supply the necessary materials or by repudiating
Allice Trading’s remaining obligations.  See Farris,
516 S.W.2d at 283. 
Furthermore, considering all of the evidence, we cannot conclude that
the evidence supporting the jury’s findings is so weak that the findings are
clearly wrong and manifestly unjust.  See Pool, 715 S.W.2d at 635.

Little York asserts that it is “undisputed” that Allice Trading committed the first material breach and the
jury’s answers do not reflect a finding that Little York was the first to
materially breach the contract.  The jury
found that both parties breached the contract, but, in Question 2, further
found that Allice Trading’s breach was
“excused.”  Question 2 included an
instruction that a “[f]ailure to comply by a party is
excused by the other party’s previous failure to comply with a material
obligation of the same agreement.”  We
conclude that the evidence presented supports the jury’s implied finding that
Little York committed the first material breach.

Little York argues that Allice
Trading is nevertheless precluded from recovering on its breach-of-contract
claim because it is undisputed that Allice Trading breached
the contract by failing to complete the detention pond, which was “essential to
the project.”  In support of this
argument, Little York relies on Atkinson
v. Jackson Bros., 270 S.W. 848 (Tex. 1925). 
In Atkinson, the Texas Supreme
Court held that in order to recover on its breach-of-contract claim, a
“contractor must have in good faith intended to comply with the contract” and
any defects could not be “pervasive” or “a deviation from the general plan
contemplated for the work.”  Id. at 851.  However, in Atkinson, the defendant’s only breach was a failure to fully pay
for lumber and materials that the plaintiff had already acquired for the
job.  Id. at 848–49.  Here, in contrast, the jury found that Little
York had committed the first breach of the contract and any failure by Allice Trading to comply with the contract was a result of
Little York’s prior breach or repudiation.

“Substantial
performance is a doctrine that allows breaching
parties who have substantially completed their obligations to recover on a
contract,” but a lack of substantial performance does not preclude recovery for
a breach of contract when the other party has committed the first material
breach.  Tips v. Hartland Developers, Inc., 961
S.W.2d 618, 623 (Tex. App.—San Antonio 1998, no pet.).  For example, in Tips, the plaintiff alleged that the defendant had failed to make
the final payment on a construction contract, although he had not completed
some of the requirements under the contract himself.  Id. at 620–21.  The
Fourth Court of Appeals conceded that the plaintiff had not substantially
performed under the contract but found substantial performance “irrelevant to
the resolution of [the] case.”  Id. at 623.  Because the plaintiff was injured by the
defendant’s anticipatory breach, it could sue for damages under a
breach-of-contract theory, despite not having substantially performed
itself.  Id.  In such a case, “[a]
contractor can recover on a contract when the failure to substantially perform
is the fault of the other party.”  Id.;
see also Fuentes v. San Anastacio Dev. Ltd., No.
13-08-00743-CV, 2010 WL 2967158, at *2–3 (Tex. App.—Corpus Christi July 29,
2010, no pet.) (mem. op.)
(holding that because jury found that defendant committed first material
breach, plaintiff did not have to obtain jury finding on its substantial
performance); Flood Control Dist. v.
Calgary Inc., No. 05-01-01462-CV, 2002 WL 1495017, at *1–2 (Tex.
App.—Dallas July 15, 2002, no pet.) (mem.
op.) (not designated for publication) (“The trial
court’s determination that the [defendant] breached the contract first renders
whether [the plaintiff] substantially performed immaterial.”).

Likewise, here,
although the jury found that Allice Trading had
breached the contract, the issue of Allice Trading’s
substantial performance was irrelevant because the jury further found that any
breach by Allice Trading was excused by Little York’s
prior material breach.  Because the jury
found that Little York committed the first material breach, and the evidence supports
that finding, Allice Trading was relieved from the
obligation of further performance.  See Mustang Pipeline Co., 134 S.W.3d at 196. 
Accordingly, we hold that Allice Trading was
not required to prove its substantial performance under the contract.

We overrule Little York’s first issue.

 

Damages

          In its second issue, Little York argues that the evidence is legally and
factually insufficient to support the jury’s damages award because Allice’s testimony regarding the cost of completion for the
pilot channel was based on an “approximate guess” and “speculative testimony.”  Little York asserts that the only competent
evidence of the cost of completion was given by Nasr, who testified that it
would cost about $40,000 for him to complete the detention pond.

          In
support of this argument, Little York relies upon Malone v. E.I. du Pont de Nemours & Co., 8 S.W.3d 710 (Tex.
App.—Fort Worth 1999, pet. denied).  In Malone, the court held that the
plaintiff had submitted no evidence on the issue of damages for lost profits
where the defendant had allegedly sold him defective paint.  Id. at 715–16.  The
plaintiff testified that he had “bought about 100,000 gallons of paint and
about 5,000 gallons was bad and it cost me about $1 a gallon.”  Id. at 716.  He
further testified that his estimate of 5,000 gallons of paint being defective
was “pulled out of the air” and “purely a guess.”  Id.


          Here,
Allice provided a more detailed breakdown of the
specific costs involved.  Allice testified that the pilot channel would cost him
about $1,678 dollars to complete at the time that he was instructed that it was
no longer needed.  To arrive at this
number, he calculated that he would have needed about $700 worth of concrete,
$95 worth of steel, $145 worth of two-inch-by-four-inch pieces of lumber, and
about $150 per day for labor.  He
estimated that removing the driveway would cost $135 to procure the necessary
dump trucks and installing the restrictor pipe for the detention pond would
cost $200, arriving at a total cost of completion of approximately $2,000.  Allice rounded the
number up to $3,000 when asked about the retainage.  Although he, on cross-examination, testified
that the $3,000 figure was an “approximate guess” in that it was a “lump sum”
of the required cost for the pilot channel, driveway removal, and restrictor
pipe, his earlier testimony was more precise and was sufficient for the jury to
rely upon it in calculating the damages, unlike the inadequate testimony in Malone. 
Viewing the evidence in the light most favorable to the jury’s award, we
conclude that the jury could have reasonably found that an award of $28,529.21
would compensate Allice Trading for Little York’s
breach of contract.  We further conclude
that the evidence that supports the jury’s award is not so weak as to render
the award clearly wrong and manifestly unjust. 
Accordingly, we hold that the evidence is legally and factually
sufficient to support the jury’s damage award.

          We
overrule Little York’s second issue.     

Rebuttal Testimony

  In its third issue, Little York argues that
the trial court erred in not allowing it sufficient time to call rebuttal
witnesses because it asserts that it was prevented from challenging portions of
Allice’s testimony that were inconsistent with his
previous answers in discovery.  As a
result, Little York asserts, this “handcuffed [it] from presenting a complete
case.”

A complaint is not
preserved for appellate review unless it was made to the trial court “with
sufficient specificity to make the trial court aware of the complaint.”  Tex. R. App. P. 33.1(a).  To preserve error in regard to the exclusion
of evidence, an offer of proof must be specific enough to enable the reviewing
court to determine the admissibility of the disputed evidence.  Hooper
v. Chittaluru, 222 S.W.3d 103, 107 (Tex.
App.—Houston [14th Dist.] 2006, pet. denied); In re N.R.C., 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.]
2002, pet. denied).  Error may not be
predicated on the exclusion of evidence unless a party’s substantial rights are
affected and “the substance of the evidence was made known to the court by
offer, or was apparent from the context within which questions were
asked.”  Wade v. Comm’n for Lawyer Discipline, 961
S.W.2d 366, 374 (Tex. App.—Houston [1st Dist.] 1997, no pet.); Tex. R. Evid.
103(a)(2).

At the beginning of the trial, the
trial court asked both parties about the amount of time that they needed to
call their witnesses, cross-examine the other parties’ witnesses, call rebuttal
witnesses, and make closing arguments, allotting each side one hour and
forty-five minutes per their agreement. 
After Allice’s testimony, the trial court informed
Little York that it had used one hour and five minutes of its allotted time
during its cross-examination of Allice.  Little York informed the trial court that it
had “woefully underestimated the time that [it] need[ed]” and explained that it would need more time to
“call a rebuttal witness” later in trial. 
The trial court denied this request, but it kept both parties informed
of their remaining time at the conclusion of each witnesses’
testimony and before their closing arguments. 
Although Little York now asserts that it needed more time to call Allice as a rebuttal witness to point out inconsistencies
with his testimony and his discovery responses,[2] at trial it requested only that it
call “a rebuttal witness” without identifying the witness or its proposed line
of questioning.  Under these
circumstances, we hold that Little York did not make the substance of its
proposed rebuttal testimony known with sufficient specificity and it has not
preserved this issue for our review.  See Tex.
R. App. P. 33.1(a).

We overrule Little York’s third issue.

Conclusion

          We affirm
the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.











[1]
          The trial court’s charge tracked
four of these five factors to aid the jury in determining the materiality of
the breach, omitting only “the extent to which the party failing to perform or
to offer to perform will suffer forfeiture.”





[2]
          We also note that Little York
had already spent a substantial amount of its time during cross-examination
confronting Allice with his previous responses in
discovery.